ROTH ET AL. *v.* THE STATE, EX REL. KURTZ ET AL.

[No. 19,322.    Filed April 1, 1902.]

INDIANAPOLIS CHARTER.—*Removal of Police.*—The board of public safety of the city of Indianapolis cannot, under the provision of the city charter (§3772 *et seq.* Burns 1901), legally remove patrolmen belonging to the police force thereof by merely entering of record the grounds of such removal, without any charges having been

Roth v. State, ex rel.

preferred against them, and without giving them any notice or opportunity to be heard in their own defense. *pp. 246-262.*

INDIANAPOLIS CHARTER. — *Removal of Police.—Constitutional Law.—* Construing the Indianapolis city charter (§3867 Burns 1901) as not granting the board of public safety the power of removing patrolmen at its pleasure does not render the statute in conflict with §2 of article 15 of the Constitution, since it is the design of the constitutional provision that the absolute power of appointment to an office authorized by a legislative act, the duration of which is not provided for by the Constitution itself, shall carry with it the power of dismissal, in the absence of some provision in the law restricting or limiting, either expressly or impliedly, such power of removal. *pp. 262-266.*

SAME.—*Removal of Police.—Constitutional Law.—*The provision of the Indianapolis charter (§3867 Burns 1901) that the members of the police force shall hold office until removed for cause, other than politics, fixes the duration of their terms within the meaning of the provision of §2 of article 15 of the Constitution that if the duration of any office is not provided for by the Constitution or declared by law, the office shall be held during the pleasure of the authority making the appointment, and such officers do not hold at the mere will or pleasure of the appointing power. *pp. 263-266.*

SAME.—*Police.—Constitutional Law.—*The provision of §2, article 15, of the Constitution that "the General Assembly shall not create any office, the tenure of which shall be longer than four years," does not apply to the office or position held by a policeman of a city. *pp. 266-268.*

From Marion Superior Court; *Vinson Carter*, Judge.

Mandamus by the State on the relation of Jacob D. Kurtz and others against Charles C. Roth and others, members of the board of public safety of the city of Indianapolis, to restore relators to their positions as policemen of said city, from which they had been dismissed. From a judgment in favor of relators, defendants appeal. *Affirmed.*

*J. W. Kern* and *J. E. Bell*, for appellants.

*C. W. Smith, J. S. Duncan, H. H. Hornbrook* and *A. Smith*, for appellees.

JORDAN, C. J.—Appellants, Charles C. Roth, Nelson J. Hyde, and Wilson C. McMillen, on and prior to December 15, 1899, and subsequent thereto, were the members of the board of public safety of the city of Indianapolis. Re-

lators on said day, and previous thereto, were policemen of that city, having been appointed by the board of public safety as members of the regular police force, and were discharging the duties of patrolmen. On said day appellants, as members of said board, by an order entered on the records of their office, assumed to dismiss relators from the police force without granting them any trial or hearing in respect to the cause of their removal. After the order of removal had been entered, they were notified that they had been dismissed, and were directed to turn over all of the property in their possession belonging to the city to the captain of police. Thereafter they instituted this action to obtain a writ of mandate against appellants, as such board of public safety, to restore them to the positions which they held at the time of the alleged removal. An alternative writ was duly issued, which required appellants to restore the relators to their former places, or, in the event of their refusal to comply with the court's mandate, they appear at the time fixed and show cause in justification of such refusal. At the time designated in the writ, appellants appeared and made return thereto, in which they recited or alleged that: "The board had investigated the standing and conduct of each of the relators, with the view of ascertaining their efficiency and fitness as such officers, and, as a result of such investigation, satisfied themselves and found the facts to be, that, all of said relators were inefficient officers, and that, to maintain the efficiency of the police force of said city, it was necessary that they, and each of them, be removed therefrom." The return then proceeds to charge that these relators treated their superior officers, and the orders given by the latter, with contempt; that they were guilty of general insubordination; that some of them were drunkards, and that others associated with lewd women and were patrons of houses of ill fame. After making these charges the return continues as follows: "That after discovering all said facts, and being satisfied of the truth of the same, the

said board, and these defendants, members thereof, believed that to allow said relators to remain members of said police force would result in the utter demoralization thereof, and that public trials of so many members of said force would result in great harm to the efficiency of said police force. That, so believing, and having in mind only the betterment of the service in the said department, they, acting as such board, made and caused to be entered upon the records of said board the following order for the removal of all said relators from the said police force, with the written reasons for such removal embodied therein, as follows, to wit: The board, after investigation as to the standing and capacity of the following members of the police force, finds them to be inefficient officers, and, for the betterment of the service, hereby orders their discharge, such discharge to take effect December 15, 1899: Jacob D. Kurtz, Daniel A. Butcher, Harry C. Barbee, Asbury D. Rinker, Ira Leet, Elmer Stoddard, Frederic Gunsaulus, Terence Moore, William L. Cox, Thomas L. Stout, and John F. Kurtz. That in making such order of removal the said board did not in any wise consider the politics of said relators, or any of them, and that neither of such relators was so removed for political reasons; nor was said board, or any member thereof, in any wise moved or influenced in such action of removal by any political considerations."

On demurrer the court held the return to the alternative writ insufficient, and, appellants refusing either to amend or make a further return, judgment was rendered by which a peremptory writ of mandate in favor of the relators was awarded. A reversal of this judgment is sought on the ground that the lower court erred in sustaining the demurrer to the return of the alternative writ. The question presented for our determination is whether the power of removing these relators, which is vested by law in the board of public safety of said city, has been legally exercised, under the procedure adopted by appellants in the removal

Roth *v.* State, *ex rel.*

of these policemen. Or, in other words, may this board, under the provisions of the statute by which the city of Indianapolis is governed, legally remove patrolmen belonging to the police force thereof by merely entering of record the reasons or grounds of such removal, without any charges having been preferred against the accused by the board, or any member thereof, or by any other person of said city, and without giving any notice to the accused party or parties, and without granting unto them an opportunity to be heard in their own defense? To determine this question, it is necessary to examine and fully consider the provisions of the charter law under which the city of Indianapolis operates, and controls its municipal affairs.

Counsel for appellees contend that patrolmen of the police force of said city are appointed to serve upon the police force during good behavior, and that they can not be legally removed, except for cause or causes, on charges preferred, after being given an opportunity to be heard in their defense in respect to the accusation preferred against them.

On the other hand, counsel for appellants contend: First, that no such interpretation can reasonably be given to the provisions of the city charter; second, that, if such a construction prevails in respect to the statute in question, it will result in bringing it into conflict with §2 of article 15 of the State Constitution, which is as follows: "When the duration of any office is not provided for by this Constitution, it may be declared by law; and if not so declared, such office shall be held during the pleasure of the authority making the appointment. But the General Assembly shall not create any office the tenure of which shall be longer than four years."

We will first consider the construction of the statute in dispute, and next, in the event it becomes necessary, the application thereto of the above provision of our Constitution.

The statute commonly known as the "Charter law of the City of Indianapolis," entitled "An act concerning the incorporation and government of cities having more than 100,000 population, etc.," has been in force since 1891. Acts 1891, p. 137, §3772 et seq. Burns 1901. Section 48 of this statute, being §3819 Burns 1901, provides: "The following executive departments are hereby established in such city: (a) Department of finance, (b) Department of law, (c) Department of public works, (d) Department of public safety, (e) Department of assessment and collection, (f) Department of public health and charities. No other executive or administrative departments shall be established in such city. * * * Each department shall have power to prescribe rules and regulations not inconsistent with any statute or ordinance, or regulation established pursuant to §45 of this act, for its own government, regulating the conduct of its officers, clerks, and employes, the distribution and performance of its business, and preservation of books, records, paper, and property under its control. * * * The officer or officers at the head of any department may appoint and remove any of his or their clerks and assistants, subject to any regulations adopted pursuant to §45 of this act, * * * ; Provided, That after the expiration of thirty days from the time when a new officer or officers shall have been appointed to the head of a department, he or they may remove clerks or assistants only upon filing in writing with the city clerk the reasons for any such removal, except that foremen, inspectors, and laborers temporarily employed under the department of public works may be removed at any time at the pleasure of the department."

Section 95 of the charter, §3866 Burns 1901, provides: "Said commissioners shall appoint a superintendent of police, chief of the fire force, and all other officers, members and employes of said fire and police forces, together with a market-master, station-house keeper, and other officials nec-

essary for such department of public safety.    *    *    *
Said commissioners of public safety may also fix the number of members of said fire and police forces, and the number of appointees for other purposes    *    *    *  ; Provided, That said forces shall be as nearly as possible equally divided politically, and no member thereof shall be dismissed except for cause as hereinbefore provided." An. examination of the provisions of the statute in question, discloses that the word "hereinbefore", as used in the preceding section, is a clerical error; and in construing the statute the word should be read "hereinafter", as was evidently intended.

Section 96, §3867 Burns 1901, provides: "Every member of the fire and police force, and all other appointees of the commissioners of public safety, shall hold office until they are removed by the board.  They may be removed for any cause other than politics, and the written reasons for such removal shall be entered upon the records of such board."

The next, §97, §3668 Burns 1901, as originally enacted, including the addition made by the amendment of 1899, reads as follows:  "On conviction of a member of the said fire or police force for any criminal offense or neglect of duty, or of violation of rules, or neglect or disobedience of orders, or incapacity, or absence without leave, or conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer, or other breach of discipline, said commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him to a lower grade. and pay. Upon any investigation of the conduct of any member of the fire or police force, or upon the trial of any charge preferred against any member thereof, said board of commissioners shall have power to compel the attendance of witnesses, and the production of books, papers and other evidence, at any meeting of such board, and for that pur-

pose may issue subpœnas, and cause the same to be served and executed in any part of the county where such city is located."

Section 100, §3871 Burns 1901, authorizes the board of public safety to appoint special policemen and firemen to perform special duty or services, and it is provided in that section that "Such persons so appointed may be removed at any time by said commissioners *without notice and without assigning any cause.*"   (Our italics.)

It also appears that, under §107, §3878 Burns 1901, of the charter involved, the commissioners of the board of public safety are authorized to create a police insurance fund, by retaining a per cent. of each policeman's salary; and by an act of the legislature in force February 24, 1899, provisions are made for creating a police-pension fund.   We simply mention these provisions of the law, as they may possibly be helpful in solving the point in respect to the proper interpretation that should be accorded to the parts of the statute herein involved.

Passing to the further consideration of the question presented, it may be asserted that an examination of the statute in controversy reveals the fact that one of its principal purposes was to make business capacity, instead of political activity or party fealty, an essential qualification for the city's public service.   While under the requirements of §95, §3866 Burns 1901, the members of the fire and police forces are required to be, as nearly as possible, equally divided politically, still, when they are once appointed, they can not be legally removed or dismissed solely on account of their political opinions.

Section 105, §3876 Burns 1901, declares that:  "It shall be unlawful for said commissioners of public safety, or any persons appointed by them or their predecessors, or holding any position on said fire or police force, to solicit any person to vote at any election for any candidate, or to challenge any voter, or in any manner attempt to influence any elector

at such election, or to be a delegate or candidate for delegate to any political convention, or to solicit for any candidate for, or delegate to such convention, or to be a member of any political committee. Any person violating the provisions of this section shall be fined in any sum not exceeding $500, to which may be added imprisonment for a period not exceeding six months."

These provisions, and others of the law, fully demonstrate that the legislature intended thereby to prevent the police and fire forces of a large city, like Indianapolis, from being used as a "political machine" by a party in power to further its interest in carrying elections, and that the evil or mischief which may be said to have formerly existed, of allowing a general dismissal of efficient policemen and firemen at each and every change in the administration of the affairs of the city, without regard to the merits or demerits of the persons so removed, should no longer be permitted. The fact that the statute so positively discloses that it was the intention of the legislature absolutely to bar out politics as a cause or ground for removal may, in reason, be said to lead to the inference that the legislature certainly intended to leave no way open by which the members of the board of public safety might, if they so designed, secure indirectly what they were forbidden to do directly, that is to say, by removing in an *ex parte* method police officers for political reasons, and thereby disguise the true cause of their action by assigning on their records, in justification thereof, a cause or ground quite different from the one which prompted the removal, without any person being permitted to appear to dispute or deny the cause or causes so assigned. It must be presumed, in the absence of some provision in the statute, that the legislature did not intend to leave what may be termed a "loophole" by which the positive prohibition of the law might be evaded, without any one being permitted to expose such evasion. In making these suggestions, however, we are not to be understood as imputing, or

attempting to impute, any such evasion to appellants in their action in removing the relators, but simply make them in support of the view with which we are impressed, in respect to the interpretation to be placed upon the statute in question.

It is properly conceded by counsel for appellees that, if the relators in this case held their positions or offices at the pleasure of the board of public safety, then, under such circumstances, they might be removed without the preferment of any charge or charges, and without notice given or trial had. It is evident from a reading of the charter in dispute that the legislature, in the enactment thereof, was not unmindful of the fact that there were certain classes of appointees that, by reason of the confidential character of the relation sustained by them to the appointing authority, the good of the public service required should hold only during the pleasure of those vested, under the law, with the power of making such appointments; and, when the legislature was dealing with or referring to this class of appointees, it seems to have used apt language in expressing its will in respect to such appointees. For instance, in §3819 Burns 1901, in defining the duties of heads of departments, it is declared that "Each of said departments shall have power to designate and appoint, and *at pleasure remove a person in such department as deputy or first assistant."* Again the same section provides "That after the expiration of thirty days from the time when a new officer or officers shall have been appointed to the head of a department, he or they may remove clerks or assistants only upon filing in writing with the city clerk the reasons for such removal, *except that foremen, inspectors and laborers temporarily employed under the department of public works may be removed at any time at the pleasure of the department."* (Our italics.)

It will be observed by examining §3871 Burns 1901, by which provisions are made for the appointment of special policemen and firemen, that the legislature was careful to

provide, in language clear and positive, that "such persons so appointed may be removed at any time by said commissioners without notice and without assigning any cause." These provisions of the law in question are influential in disclosing that, whenever the legislature intended that certain appointees should hold only at the pleasure of the authority making the appointment, it expressed its will in that respect in clear and specific language. In respect to members of the police and fire forces, §3866 Burns 1901 provides that said forces shall be, as nearly as possible, equally divided politically, and no member thereof shall be dismissed, except for cause, as hereinafter provided. In §3867 Burns 1901, next following, the legislature seems to have emphasized its will in respect to the tenure and removals of policemen and firemen by providing that: "Every member of the fire and police force  *  *  * shall hold office until they are removed by the board. They may be removed for any cause other than politics, and the written reasons for such removal shall be entered upon the records of such board." By this section the legislature expressly declares what shall be the term or holding of the members of these respective forces. Such term is not fixed so as to be measured in point of time by any particular number of years, neither is it declared to be at the pleasure of the board of public safety; but the holding or term is declared to be, in the plain and unmistakable language of the statute, until removed by the board for any cause other than politics. If, as declared, they can not be removed except for cause other than politics, it is reasonable to assume from the language or terms employed in the statute that the legislature intended that they should hold their positions during good behavior, unless physically incapacitated from discharging the legitimate duties thereof. As a part of the same section, which, in general terms, confers on the board the power of making the appointments, there is a positive restraint or limitation placed

on the power of removal, by the declaration that "no member thereof shall be dismissed except for cause as hereinafter provided." Therefore, under such circumstances, the case may be said to fall within the exception to the general rule which asserts that where the power of appointment to an office is conferred by law in general terms, and without restriction, the power of removal at the pleasure or discretion of the authority making the appointment is implied, and always exists, unless or except restrained or limited by some other provision of the law.

Counsel for appellants contend, however, that §3867 Burns 1901 invests the board of public safety with plenary power to remove any member of the police or fire force for any cause other than politics, and that the only restriction or limitation which the law places upon such power is the requirement in said section that the reasons for such removal shall be entered on the records of the board. The insistence advanced is that under this section the board, on its own motion, for any cause other than politics, may remove any member of the police force without giving him an opportunity to be heard in his defense, and that any other interpretation of this section would render it meaningless. It is asserted that the statute recognizes two distinct procedures for removal, the first being what counsel denominate "an independent investigation" in respect to any and all of the board's appointees. Such an investigation it is asserted is contemplated by §3867 Burns 1901. Second, an investigation, under §3868 Burns 1901, upon charges preferred against the policemen or firemen only. We are not impressed with these contentions in respect to the interpretation for which counsel contend. The claim made that §3867, *supra,* must be so construed as to authorize the removal of policemen by an *ex parte* proceeding, by simply entering the reasons for his removal on the records of the board, without giving him an opportunity to be heard in his own defense, is certainly untenable; and it is not in

harmony with the great weight of authority, nor with the principles of common justice. It is true, as counsel for appellants contend, that the board of public safety is invested with plenary power to remove for cause under a proper procedure, and that the law has committed to that body the right and power to determine, on a hearing, the existence of any legitimate cause for removal, and that, in regard to its action in such matters, courts, as a general rule, are not concerned. While, as a rule, a court is not permitted to review actions of a board, as is the one in question, invested with the authority to remove, where such tribunal properly exercises such power, nevertheless a court may, in a proper proceeding instituted for that purpose, restrict or confine such boards or tribunals to the limits within which the law authorizes them to act. Throop on Public Officers, §§393, 394; Mechem on Public Officers, §§452, 456; 2 Dillon on Munic. Corp. (4th ed.), §496; *Board of Aldermen* v. *Darrow,* 13 Col. 460, 22 Pac. 784, 16 Am. St. 215.

The statute declares in general terms that the removal must be for cause, and this, as the authorities affirm, necessarily and reasonably implies that the cause intended is to be some dereliction or general neglect of duty, or some delinquency affecting the general character of the officer, or his fitness for holding the office, or his incapacity to discharge the duties thereof. Mechem on Public Officers, §457; *People* v. *Fire Commissioners,* 72 N. Y. 445; *People* v. *Fire Commissioners,* 73 N. Y. 437.

On no reasonable view of the question can it be asserted, that the provisions of §3867 Burns 1901, which require, in every case of removal, that the written reasons therefor shall be entered upon the records of the board, serve only as a limitation upon the arbitrary right of the board to remove a member of the police force in an *ex parte* proceeding. It would certainly be unreasonable to assume, in the absence of some declaration in the statute to the contrary, that the legislature intended to authorize the board to con-

demn and dismiss an accused officer unheard, and then brand or smirch him by entering on a public record, as was done in the case at bar, the charge or declaration that he is inefficient, and that the betterment of the service demands his dismissal. In our opinion, the most reasonable purposes which can be ascribed to that provision of the statute, requiring the reasons for the removal of the officer to be entered of record are: (1) That the accused, and the public also, may be fully apprised upon what ground or grounds the board condemned him to be removed; (2) in the event a proceeding for review should be instituted by the removed party, the record would fully expose the reasons which the board claimed had been sustained at the hearing, and justified its order of removal.

Counsel for appellants concede that under the provisions of §97, §3868 Burns 1901, a hearing or trial of an accused policeman or fireman is contemplated. It would seem to be inconsistent with reason that the legislature should require the board, under the latter section, before proceeding to punish a policeman by suspending him without pay, or by reducing him to a lower grade, etc., to give notice to the accused officer, and award him an opportunity to be heard in his defense, while under §3867 Burns 1901 it was intended that the board might summarily remove him, and thereby wholly deprive him of his office, without giving him any hearing whatever.

In *Bennet* v. *Ward,* 3 Caines 259b, a statute was under construction which seemed in one part to provide for a summary proceeding, and by another part for the ordinary and usual procedure. The court in that case said: "Where a statute admits of two constructions, it is advisable to give it that which is consonant to the ordinary mode of proceeding," and further held that any construction of a statute which would result in authorizing a summary proceeding ought not to be adopted unless the law is positive and unequivocal in that respect. This is certainly a proper and

just rule for the guidance of courts. If we look to the rules or principles of the common law, we find that thereunder an officer can only be removed for cause, and only after a hearing. Throop on Public Officers, §352, and cases cited in foot note 3. In fact it was one of the principles of that law that no *ex parte* investigation ought to be allowed which might result in depriving a person of his rights, or in subjecting him to the infliction of a penalty. 4 Blackstone's Com. 282; Cooley's Blackstone (4th ed.), page 283. That eminent commentator or expositor of the common law in treating of summary proceedings says: "The courts of common law have thrown in one check upon them, by making it necessary to summon the party accused before he is condemned. This is now held to be an indispensable requisite though the justices long struggled the point; forgetting that rule of natural reason expressed by Seneca." The rule or maxim asserted by that eminent Latin writer, referred to in the text just quoted, affirms that "He who prefers a charge against another, however just it may be, will himself be unjust unless the accused is heard in his own defense." It is manifest, therefore, that the construction which counsel for appellants urge us to adopt is neither in harmony with the rules of the common law, nor with common justice. To hold that the declaration in the statute which provides that the officers in question shall hold office until removed by the board for cause other than politics, authorizes their dismissal without notice or an opportunity to dispute the cause, or causes preferred, is inconsistent or antagonistic to the great weight of authority. As asserted by a prominent author on the law in regard to public officers, "The doctrine, that an officer can not be removed only upon notice, and after a hearing, where the tenure of his office is during good behavior, *or until removed for cause,* * * * may be regarded as settled law in this country." (Our italics.) Throop on Public Officers, §364. The following authorities either directly or indirectly sustain this rule: Dillon on

Munic. Corp. (3rd ed.), §§250, 253, 254, and 255; Beach on Pub. Corp., §§189, 193, and 194; *State* v. *Bryce,* 7 Ohio 414; *State* v. *City of St. Louis,* 90 Mo. 19, 1 S. W. 757; *Field* v. *Commonwealth,* 32 Pa. St. 478; *Commonwealth* v. *Pennsylvania, etc., Inst.,* 2 Serg. & R. 141; *State, ex rel.,* v. *Common Council, etc.,* 9 Wis. 229; *Board of Aldermen* v. *Darrow,* 13 Col. 460; *Singleton* v. *Commissioners,* 2 Bay (S. C.) 105; *Page* v. *Hardin,* 8 B. Mon. 648; *People* v. *Fire Commissioners,* 72 N. Y. 445; *Ham* v. *Board of Police,* 142 Mass. 90, 7 N. E. 540; *Dullam* v. *Willson,* 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128; *Willard's Appeal,* 4 R. I. 595; *Kennard* v. *Louisiana,* 92 U. S. 480, 23 L. Ed. 478.

A review in detail of these authorities would unnecessarily extend this opinion. An examination thereof, however, will disclose that they uniformly support the doctrine affirmed, and the conclusion at which we arrive in regard to the construction of the provisions of the statute in dispute. Quotations from the following will suffice: Dillon, in his work on Municipal Corporations, §250, says: "Where an officer is *appointed during pleasure,* or where *the power* of removal *is discretionary,* the power to remove may be exercised *without notice or hearing.* But where the appointment is *during good behavior,* or where the removal can only be for certain specified causes, the power of removal cannot, as will presently be shown, be exercised, unless there be a formulated charge against the officer, *notice* to him of the accusation, and a *hearing* of the evidence in support of the charge, and an opportunity given to the party of making defense."

In §253 of the same work, it is said: "Respecting the *proceedings to amove,* it has already been observed that they must be had by and before the *authorized body duly assembled,* in conformity with the rules on that subject, which are elsewhere stated. The proceeding in all cases *where the amotion is for cause is adversary or judicial in*

*its character;* and if the organic law of the corporation is silent as to the mode of procedure, the substantial principles of the common law as to proceedings affecting private rights must be observed." (Our italics.)     See, further, §§254, 255.

Beach on Public Corp., §193, asserts the rule as follows: "Before an officer whose tenure of office is not discretionary can be removed, he is entitled to a personal notice of the proceeding against him, which notice must contain the fact that a proceeding to amove is intended and the time when and place where the trial body will meet.     The charges must be specifically stated, with substantial certainty, and the accused must be given time to produce his testimony and present his answer, and is entitled to be represented by counsel and to cross-examine the witnesses against him."

In *State, ex rel.,* v. *City of St. Louis,* 90 Mo. 19, the question arose over the removal of a police justice of the city of St. Louis.     These justices were appointed by the mayor, and the city charter provided that "An appointed officer may be removed by the mayor or council for *cause.*" (Our italics.)     The facts in that case disclose that the relator was removed by the council without notice, and without being given a hearing.     It was held, under the circumstances, that the removal was illegal.     The court, in the course of its opinion, said: "Where an officer is appointed during pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing.     *Field* v. *Commonwealth,* 32 Pa. St. 478; *Ex parte Hennen,* 13 Pet. 230, 10 L. Ed. 138.     But where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused, and after notice, with a reasonable opportunity to be heard before the officer or body having the power to remove.     *Gaskin's Case,* 8 T. R. 209; *Field* v. *Commonwealth, supra;* *State* v. *Bryce,* 7 Ohio 414; Dillon on Mun. Corp. (3rd

ed.), §§250 to 254.  *  *  *   When the removal is not discretionary, but must be for a cause, as is the case here, and nothing is said as to the procedure, a specification of the charges, notice, and an opportunity to be heard, are essential.   This, we think, is the result of the authorities before cited."

In *Field* v. *Commonwealth,* 32 Pa. St. 478, after an extended review of authorities, the court said: "Where the appointment is only during pleasure, it is then an office *ad libitum,* or at pleasure.   But the other rule, laid down in Baggs' case and Dr. Gaskin's case, and affirmed in the case just cited, is as clearly the true one, where the appointment is either during *good behavior for a limited, or unlimited period,* or where the removal can only be, for certain specified causes.   Upon this question, the authorities in England and in this country are clear, distinct, and emphatic, and *in entire accordance with the spirit of our free institutions.''*   (Our italics.)

In *State, ex rel.,* v. *Common Council,* 9 Wis. 229, it is held that, where inferior officers or bodies (which in that case was the common council) are granted the power to remove an officer for due cause, they are not authorized to remove at discretion, and that the words "due cause", in the statute therein involved, operated as a limitation upon their powers of removal.

The case of *Dullam* v. *Willson,* 53 Mich. 392, is one very much in point, and in that appeal the authorities are very fully reviewed by the court.   The constitution of Michigan gave the governor of that state authority "to examine into the condition and administration of any public office, and the acts of any public officer, elective or appointed, to remove from office for gross neglect of duty, or for corrupt conduct in office, or any other misfeasance or malfeasance therein, either of the following state officers, to wit: *  *  *   or any other officer of the state, except legislative and judicial".   The constitution was silent in respect to

any hearing to be had before removal. By its language, it was the duty of the governor to "examine," etc., and it clothed him with the power "to remove." It appears that the executive in that case entered on the records of his department an order wherein he recited that James C. Willson, holding the office of trustee of the Michigan institution for educating the deaf and dumb, had been guilty of official misconduct and habitual neglect of duty as such trustee, and that therefore he removed him from office. On the same day that the order of removal was entered, the governor notified Willson that he had been dismissed for official misconduct and habitual neglect of duty. It will be seen that the method employed by the governor in that case was similar to the procedure in the case at bar. The court in that appeal said that the question to be determined was: "Whether, under the constitution and laws of Michigan, the governor has power to remove a state officer by such action as was taken in this case, viz.: an act of removal evidenced by writing, under the hand and seal of the executive, filed in the executive office, with notice thereof to the officer removed, communicating to him the alleged grounds of removal, but without giving him notice of charges, complaint or claim of official misconduct or neglect of duty, or opportunity of hearing, or defense." Judge Campbell, in the course of his concurring opinion, said: "The fact, then, that the statute and the constitution, in giving the governor power to remove, prescribes no methods of examination, can in no way relieve him from the necessity—even if he is to pass personally on the facts—of having specific charges of misconduct communicated to the officer, and established by proof, with a full opportunity to the respondent to examine and cross-examine witnesses, and be heard on the facts and the law." The ultimate conclusion of the court was that the action of the governor in removing the officer, under the circumstances, was illegal, and could not be upheld.

The reasonings of the authorities from which we have quoted certainly sustain the view which we entertain in regard to the question as here presented, to the effect that the cause or causes contemplated by the provision of the statute in question must be established after a hearing, in which an opportunity is given by the board to the accused to dispute the charges preferred. To interpret the law in controversy as appellants contend, and thereby hold that by the language or terms therein employed the legislature intended that members of the police force might be summarily condemned and removed in an *ex parte* manner, and thus be deprived of all right to their offices and of all interest or right which they might have in any police pension fund, which in part their salaries had aided in creating, would be, in our opinion, imputing to the legislature what it did not intend, otherwise it would have expressed its will in this respect in positive language. That these relators might have forfeited their rights to hold longer their places by reason of misbehavior in office, when such misbehavior had been established to the satisfaction of the board in a proceeding where they were given an opportunity to be heard and to dispute the alleged charges of misconduct or misbehavior, can not be successfully controverted. But the question as thus stated is not the one, under the circumstances, with which we have to deal. It is claimed by counsel for appellants that to give each accused policeman an opportunity to be heard would consume much of the board's time in holding trials. As to this question a court is not concerned. If the city's charter requires amendment so as to authorize policemen and firemen to hold their places at the mere will or pleasure of the appointing power, that question should be presented to the legislature and not to the judiciary.

We have carefully examined and considered the cases to which we have been referred by counsel for appellants, but the statute or statutes involved in each are so different from

the provisions of the charter under consideration, that these decisions virtually afford no support to their contentions. We are constrained to hold that the relators, under the provisions of the charter, were entitled to a notice and hearing in regard to the cause or causes alleged for their dismissal, before the board could lawfully exercise the power of removing them from office.

This brings us to the second proposition advanced by appellant's counsel, to the effect that such a construction of the statute renders it, to an extent, in conflict with §2 of article 15 of the Constitution, previously set out. This provision of our fundamental law may, for the purposes of this case, be divided into two parts, so as to read: First. "When the duration of any office is not provided for by this Constitution it may be declared by law; if not so declared such office shall be held during the pleasure of the authority making the appointment." Second. "The General Assembly shall not create any office the tenure of which shall be longer than four years." Counsel for appellants argue that the duration of the office of policemen is not provided for by the Constitution; that the tenure of the offices to which the relators had been appointed is not declared by law; hence it follows, as counsel assert, that under the Constitution they could only hold during the pleasure of the appointing power, which is the board of public safety.

It is further contended that by the latter part of §2 of article 15, the legislature, in the enactment of the charter of the city of Indianapolis, was not authorized to fix the tenure of the members of the city's police force beyond four years, and that it could only by declaring their tenure to be for some fixed time in years, not exceeding four, deprive the board, under the Constitution, of the right or power of removing them at pleasure. The provision of §2 of the act in question, embraced in the first part thereof, is nothing more than a recognition and embodiment therein, by the

framers of our Constitution, of the general rule asserted by the unwritten law previously referred to, which affirms, in effect, that where the power of appointment to an office is conferred by law in general terms, without any restriction or limitation, the power of removal will be at the pleasure of the appointing power. A provision identically the same as the first part of §2, contained in the constitution of the state of New York, was so construed by the court in *People, ex rel., v. Robb,* 126 N. Y. 180, 27 N. E. 267. In fact, the design of the provision in question is that the absolute power of appointment to an office authorized by a legislative act, the duration of which is not provided for by the Constitution itself, shall carry with it the power of dismissal, in the absence of some provision in the law restricting or limiting, either expressly or impliedly, such power of removal.

The provisions of the charter which in express terms declare that members of the police force shall not be dismissed except for cause, and that they shall hold until removed for cause other than politics, certainly declares the duration of their terms, within the meaning or intent of the first part of §2 of article 15. And as their removal is thus restricted, they can not be said to hold, within the meaning of this provision, at the mere will or pleasure of the appointing power. It is true that their terms are not fixed for a definite point of time in months or years, but the period of their holding is so declared and fixed by the law as to constitute a restriction and limitation on the power of the board to remove, within the rule recognized and asserted in the section in question.

The constitution of the state of Illinois, provides, that "an office is a public position created by the constitution or law, continuing during the pleasure of the appointing power or for a *fixed time.*" (Our italics.) In *People v. Loeffler,* 175 Ill. 585, 51 N. E. 785, this particular provision was under consideration. The legislature of that state, it seems,

had passed a law providing for an examination of appointees in cities and towns. A city clerk declined to obey this law, for the reason claimed, among others, that according to the constitution all officers must either hold their offices at the pleasure of the appointing power, or for a fixed or definite term in point of time; contending, therefore, that, under the statute involved, offices were authorized to be held during good behavior, or until dismissed for cause, and that such tenures were not recognized by the provision of the constitution in question, and were in opposition thereto. In passing on the point presented in that appeal, the court said: "But the words 'fixed time', as here used, do not necessarily mean a definite period, as for instance one year, two years or three years. On the contrary, they refer to a term of office which is established or settled, as contradistinguished from a term which depends upon the mere will or pleasure of the appointing power. A man, who is appointed to hold his office during good behavior, or until removal or discharge for cause, occupies it for a settled and established term; and the time, for which he occupies it, is in a certain sense a fixed time, because it does not end at the pleasure of the appointing power."

Counsel for appellants, in support of their contention, refer us to two cases, one of which is *State, ex rel.,* v. *Mayne*, 68 Ind. 285. The only question before the court in that case was whether the board of directors of the state prison north had legally removed the warden thereof, who, under the law, could only be removed for cause. The ground on which the board attempted to justify its right to remove, was that the warden of the prison had refused to obey its order to dismiss the deputy warden and four of his assistants or prison guards, in order that their places might be filled by persons selected by the board of directors. The court, under the facts, held that the refusal of the warden to obey this order did not constitute a cause for his removal, for the reason that the directors had no authority to require

him to obey such an order.  The persons whom the board ordered the warden to dismiss were all appointed by him with the advice and consent of the directors.   The statute pertaining to the government of the prison in question provided that "all the officers shall hold their respective offices until their successors shall have been elected (or) appointed and qualified."   This court, in the course of its opinion, by Howk, J., said: "The deputy warden and the guards of the prison were the appointees of the warden and the law had not declared the duration of their offices."   A dictum is then asserted to the effect that, under the provision of §2 of article 15 of the Constitution, the persons ordered to be removed by the warden would hold their positions during his pleasure.   It may be questioned as to whether this provision of the Constitution has any reference or application whatever to persons who are merely deputies of an officer, who ordinarily, as a rule, continue in their employment at the will or pleasure of their chief or principal, by whom they are selected or appointed.   Be this as it may, however, the provisions of the statute in that case in regard to the holding of the persons ordered to be dismissed, and the provisions of the statute now under consideration, are quite different; and that decision is easily distinguished from the holding in the case at bar, and lends no support to counsel's contention.

The other authority relied upon is *People* v. *Hill,* 7 Cal. 97.   This case appears to have arisen over the removal of a captain of police of the city and county of San Francisco. The court in its opinion stated that there were but two propositions involved: "First, the authority of the appointing power to remove an officer when the term of the office is not fixed by law; second, the constitutionality of the act consolidating the city and county governments of San Francisco."   The court, in considering the first proposition, referred to the provisions of the constitution of California, which are similar to those of §2 of article 15 of our own.

The court held that the word "duration", as employed in the constitution, "signified extent, limit, or time", and that, when the tenure of an office was not fixed by law, it could be held only during the pleasure of the appointing power. We have fully recognized this rule in the case at bar, but hold that under the provisions of the charter the duration of relators' terms were fixed or declared by law, and hence the board was deprived of the right to dismiss them at its mere will or pleasure. The decision in *People* v. *Hill, supra,* so far as it may be accepted as an authority, in no wise conflicts with the construction which we place upon the statute in this appeal.

The latter part of §2, which declares that "the General Assembly shall not create any office the tenure of which shall be longer than four years," by its express and specific language in reference to "years" may be said to contemplate and be intended to apply to offices created, the terms of which are definitely fixed by law as measured by years, one, two, three, or four. From the very character or nature of the office or position held by a policeman of a town or city, this provision of our fundamental law can not, in reason, be held to apply. It contemplates something more than the mere method of selecting or appointing policemen by a city or town under either an express grant or power given by statute, or by authority implied from a general grant to organize such municipalities. To create an office, and merely to provide for filling the same, or for regulating the duties or functions thereof, are quite different. As affirmed by the authorities, the word "create" has a clear, well settled, and well understood signification. It means to bring into existence something which does not exist. *City of Indianapolis* v. *Navin,* 151 Ind. 139, 41 L. R. A. 337. The provision in question contemplates the creation of an office which may be filled either by election or by appointment for a certain definite time, which cannot exceed

the period of four years.   At the time our Constitution was
adopted, policemen employed in cities were not elected, but
were appointed or employed by municipal authorities, with-
out having fixed terms, and were subject to dismissal at any
time at the will or pleasure of the authority appointing
them.   In fact, it may be asserted that, when the inhabit-
ants of a certain territory or district are empowered in gen-
eral terms by law to organize a city or town government,
such general grant of power even in the absence of any ex-
press provision to that effect, would carry with it an im-
plied or incidental power upon the part of such town or
city, when organized, to select necessary peace officers to
serve as conservators of the peace, and thereby maintain
and preserve good order therein.   Cooley's Const. Lim.,
pp. 63, 64; Dillon Mun. Corp., §§91, 94.

In *State* v. *Sims,* 16 S. C. 486, it is held that the power
to appoint policemen is implied under the authority granted
to a city to make rules necessary to good order and public
peace.   The power of the legislature to provide for a police
force, and the appointment of the members thereof, ema-
nates not from the Constitution, but from the police power
inherently possessed by the State.   If the contentions of
counsel for appellants could be sustained, the result would
necessarily be to prohibit the legislature from enacting any
law which would prevent municipal authorities from re-
moving policemen at pleasure, on account of politics or
otherwise, unless the law fixed or measured their terms at
a definite time, not exceeding four years.   Under such a
law, the efficiency of the police and fire forces of our large
cities, as experience demonstrates, would be greatly im-
paired.   It follows, that the provisions of the city charter
involved are not, under the interpretation which we have
placed thereon, in conflict with §2 of article 15 of the State
Constitution; and the ultimate conclusion reached is that
the relators, for the reasons herein stated, were illegally

Gas Light, etc., Co. *v.* City of New Albany.

removed from their positions, and the judgment of the lower court awarding the peremptory writ of mandate for their restoration was right, and is therefore affirmed.

It appears that appellants, since the submission of this appeal, have been succeeded in office, and the judgment below is ordered to be affirmed as of the date of submission.