James A. BOUSSOM, Billy D. Cook, John H. Drexler, Denise R. Harvell, Robert E. Hendershott, Gary L. Keck, Dennis Minegar, Dale L. Pflibsen, Edgar R. Rapp, Jack A. Sanders, Richard W. Stamatovich, Ray Vinson, Edwin R. Yoder, Lawrence G. Young, Richard R. Clark, Donald E. Cripe, and Robert Genth, Plaintiffs,

v.

The CITY OF ELKHART, Indiana, Eleanor Kesim, Mayor of said City, Dean Yoder, Fire Chief of said City, and William Wargo, Police Chief of said City, Defendants.

No. S 79–332.

United States District Court,
N.D. Indiana,
South Bend Division.

July 21, 1983.

David B. Keller, Steven H. Hazelrigg, Paul D. Mathias, Fort Wayne, Ind., for plaintiffs.

David Stutsman, City Attorney's Office, Elkhart, Ind., William J. Nye, Gary D. Boyn, Elkhart, Ind., for defendants.

## MEMORANDUM OPINION

SHARP, Chief Judge.

This case was tried before this court solely on the issue of liability. This memorandum opinion briefly states the legal basis of this court's findings of fact and conclusions of law entered herewith. The claims in this action are made under 42 U.S.C. § 1983 and jurisdiction is invoked under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3) and (4).

### I.

The defendants in this case demoted a number of policemen and firemen in disregard of I.C. 18–1–11–3. The policy sought to be served by the statute was that of preventing "the evil or mischief which may be said to have formerly existed, of allowing a general dismissal of efficient policemen and firemen at each and every change in the administration of the affairs of the city, without regard to the merits or demerits of the persons so removed, should no longer be permitted." *Roth v. State,* 158 Ind. 242, 63 N.E. 460 (1902). That statute as well as its predecessors have been reviewed and construed by the Supreme Court of Indiana as well as the Court of Appeals of Indiana.

Certain general propositions regarding demotions and discharges of policemen and firemen were clearly established by those cases prior to January 1, 1980, the relevant time in this case. A city administration may not remove policemen to make room for its friends, *Shira v. State,* 187 Ind. 441, 119 N.E. 883 (1918), nor can a policeman or fireman be removed if the cause for dismissal bears no reasonable relation to a policeman's or fireman's fitness or capacity to hold his position. *Mobley v. City of Evansville,* 130 Ind.App. 575, 167 N.E.2d 473 (1960). The cases further establish that policemen and firemen cannot be removed under the guise of reducing membership in their departments. *Mills v. City of Winchester,* 130 Ind.App. 397, 162 N.E.2d 97 (1959).

In 1975 a question was presented to the Court of Appeals as to whether the statute was applicable in the case of demotions. *Jenkins v. Hatcher,* 163 Ind.App. 95, 322 N.E.2d 117 (1975). The court held that I.C. 18–1–11–3 did not apply in the case of demotions. In 1977 the General Assembly adopted the amendment making it clear that the protection of the statute extended to those who were demoted as well as those who were discharged.

Since the amendment made no other changes in the statute, the amendment must be read as including the judicial construction given the statute and its predecessor the Indiana Charter Act since the *Roth* decision in 1902. See, *Thomas v. Eads,* Ind. App., 400 N.E.2d 778, 783 (1980):

> It has long been held in Indiana that when a court interprets a statute and the legislature fails to take action to change that interpretation, the legislature is presumed to have acquiesced in the court's interpretation. See *King v. Harris,* et al., (1965), 140 Ind.App. 9, 212 N.E.2d 387; and *Loeb et al v. Mathis,* (1871) 37 Ind. 306. When a statute has undergone several amendments, the latest is deemed to embody previous construction by a court unless a contrary intent is manifest.

Between the 1977 Amendment and January 1, 1980, the Court of Appeals at least

twice observed in dicta that the statute applied to policemen and firemen who were demoted. *Morris v. City of Kokomo,* 178 Ind.App. 56, 381 N.E.2d 510 (1978), and *State ex rel Warzyniak v. Grenchik,* 177 Ind.App. 393, 379 N.E.2d 997 (1978). In *Warzyniak,* the court specifically held that officers could not be demoted as part of a reorganization, and further stated:

> However, the district court in *Smulski* [435 F.Supp. 770], *supra,* found that the ordinance in question provided an exclusive list of reasons for demoting a policeman. Only these reasons constituted "sufficient cause" for demotion. Thus, the policeman had a legitimate claim for entitlement to his rank, absent sufficient cause for demotion. 435 F.Supp. at 774.

Municipal Ordinance No. 1057 clearly intended to protect policemen in their positions, particularly against political influences. The ordinance authorized demotion only for violation of written rules and regulations, as established by the Board and the Police Chief. No demotions were to be made for political reasons.

The municipal ordinance affirmatively created an expectation, on the part of each policeman, that he would continue in his rank unless he violated one of the written rules and regulations. The City of Whiting could not deny this expectation and then defend its acts of demotion on the theory that no written rules or regulations had been adopted. See *Grenchik v. State ex rel Pavlo,* 177 Ind.App. 393, 373 N.E.2d 189 (1978).

In December 1979, the State Association of Cities and Towns issued its "Indiana Elected Municipal Officials Handbook." Pages 89–95 of the Handbook were devoted to the handling of police and fire discipline and made it clear that demotions could be made only as provided in the statute.

Throughout the course of events that occurred in 1980, the Mayor sought and received the advice of the then city attorney regarding the legality of the actions taken.

In the early stages of the case presently before the court, defendants had outside counsel but no claim is made that outside counsel rendered an opinion that the defendants' actions were lawful. The then city attorney testified that the rationalization for the lawfulness of the defendants' acts may be found in the defendants' brief filed in the Court of Appeals in the summer of 1980. The brief was not prepared by outside counsel but by an associate city attorney. The City's position is stated at page 9 thereof as follows:

> City Administrative Officials May Make General Administrative Re-Organizational Changes Involving Demotion of Some Police and Fire Officers, Irrespective of I.C. 18–1–11–3, Which is a Statute Relating In Relevant Part Only to Political or Disciplinary Demotions.

The argument is based in large part on certain statutes cited in the brief. At the time the brief was written, these statutes were found in Title 18, Burns Indiana Statutes Annotated, Article 1, Chapter 1.5, under the title "Powers of Cities". The brief omits the very first section of that chapter, I.C. 18–1–1.5–1, which bears the description "Powers of Cities—General—Limitations". In pertinent part, that section provides:

> ... Any such power may be exercised by a city under authority of this chapter only if and to the extent that such power is not by express provision denied by law ...

In other words, the statutes cited in the defendants' Appellate Brief grant powers which may not be exercised if some other statute denies the power. The statutes relied on by defendants in their Appellate Brief in support of the legality of their action include I.C. 18–1–1.5–15 which grants a city general power to maintain police and fire departments, I.C. 18–1–1.5–16 granting residual powers to cities, and I.C. 18–1–1.5–23 which provides for the liberal construction of powers granted, but which does not provide that cities may use the general provisions of Title 18, Chapter

1.5, to override specific provisions found in other sections of the statutes governing municipalities. The defendants also relied on I.C. 18–1–6–2 and 18–1–6–4 for the proposition that the Mayor and department heads may remove any of their subordinates they may wish to remove. The power of removal granted the Mayor by I.C. 18–1–6–2 was found in the original Cities and Towns Act of 1905, being Chapter 129, Section 80, p. 219. That Act, of course, also contained I.C. 18–1–11–3 which in 1905 was designated as Acts 1905, Chapter 129, Section 160, p. 219.

■ The judicial construction of I.C. 18–1–11–3 since its inception clearly establishes that the Mayor's powers of removal did not extend to the removal of policemen and firemen. Similarly, the power of department heads to remove their subordinates, being the power involved in the defendants' treatment of I.C. 18–1–6–4, traces its origin to the Cities and Towns Act of 1905, Acts 1905, Chapter 129, Section 82, p. 219. Here, again, the cases clearly establish that police chiefs and fire chiefs had no power under I.C. 18–1–6–4 to remove subordinates without complying with the provisions of I.C. 18–1–11–3. Thus, an examination of the statutes together with the history of I.C. 18–1–11–3 since the statutes were initially enacted, clearly show that policemen and firemen may not be demoted unless the statutory method is followed. See *Atkins v. Klute,* 169 Ind.App. 206, 346 N.E.2d 759 (1976).

## II.

During its 1980 and 1981 sessions, the Indiana General Assembly amended and recodified I.C. 18–1–11–3. The statute is now identified as I.C. 36–8–3–4. It must be read in conjunction with I.C. 36–8–1–12 which purports to describe certain policemen and firemen as holding upper level policy making positions. This is done by providing that officers in certain pay grades shall be considered as upper level policy makers.

I.C. 36–8–3–4 permits a mayor to demote policemen and firemen from upper level policy making positions at will and without being bound by the requirement of a due process hearing.

■ The evidence in this case shows that one cannot be described as being or not being an upper level policy maker solely because of his relative rank in the departmental pay scale. The evidence indicated that at least one of the officers ranking immediately below the police chief in 1979 was purely a staff officer. Commander Boussom was charged with the responsibility of obtaining federal grants. He served as a community liaison officer. He performed other services which involved absolutely no policy making functions.

There were two other officers in the police department who possibly fall within the statutory definition of "upper level policy makers." They were Cripe and Pflibsen. Cripe was in charge of the uniform division. His chief's testimony was to the effect that he had no policy making functions. Pflibsen was in the third highest rank below the chief, that of lieutenant. The only "policy" he made had to do with such intra-shift matters as how many officers could take a meal break at one time.

With regard to the fire department, Chief Yoder's testimony indicates that he did not know enough about Deputy Chief Edwin R. Yoder's duties to know whether he was a policy maker or not. Certainly there is nothing in the description of his duties by Edwin Yoder to show that he exercised any policy making functions.

The language of I.C. 36–8–1–12 indicates that the General Assembly sought to create a rebuttable presumption. If it is so interpreted, the presumption has been rebutted here in view of the lack of any evidence that the three policemen or Edwin Yoder in fact made policy. This section is obviously an attempt to deal with the problems created by *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), in holding that

policy making employees could be removed for political purposes. This ruling led to a great deal of analysis of what responsibilities and duties were required in a particular job for the purpose of determining whether a jobholder was or was not a policy maker. See, e.g., *Livas v. Petka,* 711 F.2d 798 (7th Cir.1983). See also, *LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983).

It is essential to again note that the legal basis of the court's decision here refers to standard, constitutional, statutory and case law that were clearly established on January 1, 1980. Changes in the constitutional case law as indicated in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) are not here applied. The amendment to I.C. 18–1–11–3 which became effective September 1, 1980 are not the bases for any action here. The 1981 and 1982 amendments that are reflected in I.C. 18–1–11–3 are not applied here. It would be just as unfair to apply post January 1, 1980 statutory amendments retroactively as it would to apply *Branti* retroactively and this court has done neither in this case.

■ The plaintiffs have invited this court to declare I.C. 36–8–1–12 in violation of the Fourteenth Amendment of the Constitution of the United States. This court declines to do so for several reasons. First, the Attorney General of Indiana was never notified to appear and defend the constitutionality of that statute as is this court's normal custom. Second, given this court's approach to the claims of the plaintiffs, it is not necessary to reach that constitutional issue. Third, the really damaging conduct of the defendants occurred before September 1, 1980. Finally, even assuming the pre-September 1, 1980 application and validity of I.C. 36–8–1–12 there is great doubt if any of the plaintiffs are "upper level policy makers" as defined therein.

### III.

■ Upon receipt of the order from the Court of Appeals which had the effect of ordering defendants either to reinstate plaintiffs or bring charges against them, Mayor Kesim instructed the Chiefs to file charges and they did so. There can be no doubt that the charges were brought in retribution for the plaintiffs having gone to court in an effort to assert their rights. "Retribution" as used in this context is a term of art. It is unnecessary to show a retaliatory intent. It is sufficient that a plaintiff show only that conduct protected under the First Amendment was a substantial factor in producing adverse consequences for the plaintiff.

This point is made with brevity and clarity in *Bowen v. Watkins,* 669 F.2d 979, 983 (5th Cir.1982):

> The plaintiffs here urge that, after finding the activity to be constitutionally protected, the trial judge imposed an additional requirement—that the plaintiffs show that the decision was made in *retaliation* for their request for a hearing. If indeed the trial judge imposed such a requirement, that would, of course, require us to reverse, for *Mt. Healthy [City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 968, 50 L.Ed.2d 471] requires only that the employee show that his constitutionally protected conduct was a substantial or motivating factor in the decision.

As *Bowen* also points out, it is not necessary for a plaintiff to establish that his protected conduct was the only substantial factor in producing the adverse result. There may be several contributing factors and it is enough that one be the protected conduct:

> The opinion in *Mt. Healthy* clearly contemplates that a decision may be the product of more than one substantial factor; it refers to "*a* substantial factor", 429 U.S. at 287, 97 S.Ct. at 576 (emphasis added). Moreover, the second step of the analysis—determining whether the same decision would have been reached absent the impermissible factor—suggests that if the defendant prevails at that point,

even though the impermissible factor was substantial, other factors were also substantial in reaching the decision. Consequently, even if budgetary considerations were a substantial factor—and there is no finding to that effect—we remain convinced that the unrest was also a substantial factor in the decision of the Chief of Police. 669 F.2d at 984.

*McGill v. Board of Ed. of Pekin Elementary School,* 602 F.2d 774 (7th Cir.1979), also stands for the proposition that a plaintiff need not show that defendants consciously wished to retaliate against the plaintiff for the exercise of a protected right. There, the Court says, it is enough for the plaintiff to show that the protected conduct was the motivating factor in the adverse action.

■ The September reorganization punished the plaintiffs for their exercise of First Amendment rights and had a chilling effect upon the future exercise of those rights. There can be no question that the plaintiffs were reassigned in September because of their having filed suit over the original demotions. The evidence suggests that there was an additional demotion in the case of those assigned to the rank of junior sergeant and shift chiefs. However, it was unnecessary to examine this question because, aside from any question of improper demotion, it is clear that a wrong occurred when plaintiffs were subjected to the retaliatory transfer.

It is difficult to imagine what could have a more chilling effect upon policemen and firemen who were wrongfully terminated than the knowledge that even if they were successful in seeking redress through the courts, they could be assigned to make-work jobs with unpleasant working conditions. They would have undergone the rigors of litigation for nothing. If this is the case, then the Indiana Statute is rendered meaningless because the way is open for any administration to rid itself of unwanted policemen and firemen by the simple expedient of assigning them to specially created, punitive jobs.

The defendants strongly maintain that their action was in response to this court's invitation to do so and not for retaliatory purposes. This court's order of May 21, 1980 speaks for itself and must be considered in the context of the proceedings here. Nothing in that order was designed to prevent these defendants from filing legitimate charges against any of the plaintiff policemen and firemen. Neither was the filing of such charges made mandatory by this court's order. The choice was entirely with the defendants, not with this court. The defendants were clearly at liberty to file no charges at all. It should be noted that of *all* the charges filed there was not a *single* final determination adverse to the person charged. Moreover, there was not a final conclusive hearing on a single charge. All these charges were abandoned by these defendants before any were prosecuted to conclusion. These facts are of very critical importance in the determination of the basic liability issues in favor of the plaintiffs.

## IV.

■ The defendants have raised the good faith defense relying on *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); and *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The good faith defense is an affirmative one and the burden to plead and prove the same is on the defendant. See *Harris v. Pirch,* 677 F.2d 681 (8th Cir.1982), and *Whitley v. Seibel,* 613 F.2d 682 (7th Cir. 1980). Municipalities are not immune from liability for Section 1983 claims and may not assert the good faith defense of its officers as a defense to such liability. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Therefore, defendant City of Elkhart cannot avail itself of the good faith defense.

One of the basic concerns of the line of immunity cases is to protect officials from

claims for money damages that result from the application of newly developed legal standards. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In *Harlow*, the Supreme Court specifically stated that:

> Consistently with the balance at which aimed in *Butz* [*v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)], we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretional functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland, supra,* 420 U.S., at 321, 95 S.Ct., at 1000. 102 S.Ct., at 2738.

The key in *Harlow* is "discretionary functions." It is highly doubtful that the reasoning and result in *Harlow* avails much to the defendant officers in the case presently before this court. The standards regarding demotions and discharges of policemen and firemen were clearly established by January 1, 1980. The officer defendants have failed to sustain their burden of proof on the issue of good faith immunity. See *Alexander v. Alexander,* 706 F.2d 751 (6th Cir.1983). However, the denial of good faith immunity against a defendant officer does not automatically trigger the award of punitive damages against such an official in the context of a claim under 42 U.S.C. § 1983.

### V.

*In Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme Court reviewed the various standards for awarding punitive damages in the tort context. The Court noted that the general standard used in the large majority of state and lower federal courts did not require a showing of actual malicious intent but rather permitted punitive awards on variously stated standards of negligence, recklessness, or other culpable conduct short of actual malicious intent. 103 S.Ct. at 1634. The Court then held that the same standard for an award of punitive damages should be applied in a § 1983 action and that the recklessness standard is not too vague to be fair or useful. 103 S.Ct. at 1637. The Court specifically stated that:

> As for punitive damages, however, in the absence of any persuasive argument to the contrary based on the policies of § 1983, we are content to adopt the policy judgment of the common law—that recklessness or callous disregard for the plaintiffs rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages.

103 S.Ct. at 1637. See also, *Lenard v. Argento,* 699 F.2d 874 (7th Cir.1983); *Freeman v. Franzen,* 695 F.2d 485 (7th Cir.1982); *Iskander v. Village of Forest Park,* 690 F.2d 126 (7th Cir.1982).

One certainly may question the legal wisdom of these defendants in regard to the clearly established statutory and constitutional rights of these plaintiffs just before and just after New Years Day 1980. However, the record fails to disclose sufficient proof of "recklessness" or "callous indifference" as most recently defined in *Smith v. Wade, supra.* Thus, plaintiffs are not entitled to punitive damages against the individual defendants in their official capacities nor against the City. *Newport v. Facts Concert, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

### VI.

In this case, the defendants appealed this court's order dated May 21, 1980, which reads in pertinent part that:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this action be, and hereby is, abated in this Court until such time as defendant City of Elkhart, Indiana, has completed any proceedings it may wish to initiate against plaintiffs and all others similarly situated, pursuant to I.C. 18–1–11–3; that any such proceedings be initiated no later than thirty (30) days from the entry of this Order; that, pending the completion of any such proceedings, defendant City reinstate plaintiffs and all others similarly situated to the positions they held on January 1, 1980; and that defendant City pay plaintiffs and all others similarly situated all pay and allowances they have lost, or will lose, as a result of their demotions on or about January 2, 1980.

On June 9, 1980, this court denied the defendants' motion for stay of pending appeal. However, on June 11, 1980, the Seventh Circuit Court of Appeals stayed this court's order in all respects and then continued the stay by its order of June 20, 1980 with the exception of its mandate regarding initiation of proceedings against the plaintiffs. The defendants' appeal of this court's order of May 21, 1980 borders on the frivolous. Subsequent conduct by the defendants in regard to filing and dismissing charges merely adds fuel to that fire.

On October 24, 1980 attorneys for the parties executed a stipulation for the dismissal of the defendants' appeal, and on November 10, 1980, the Seventh Circuit Court of Appeals "ordered that this appeal from a decision of the United States District Court for the Northern District of Indiana is hereby DISMISSED pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure."

The defendants now seek to use this dismissal as a shield against liability for their demotion of the plaintiffs on January 2, 1980. Their argument is that, because their appeal was dismissed, all issues concerning the January 2, 1980 demotions have been forgiven and forgotten by the plaintiffs and were determined to have been proper to the court.

The defendants' argument however misunderstands the effect of dismissal on appeal in the United States court system, which

> is to remove any impediments to, or stay of proceedings in, the trial court which are the consequences of the appeal. Thereafter, the cause stands in the trial court as though no appeal had ever been taken, and the judgment, decree, or order appealed from becomes enforceable, as much so as though no appeal had been taken. Where the order appealed from was a final order, it remains a final order on dismissal of the appeal. 36 C.J.S., Federal Courts, § 296(22), p. 1084.

An example of this rule of law is found in the case of *Diamond v. Thompson*, 523 F.2d 1201 (5th Cir.1975). In that case, prison inmates filed a class action for return of personal property confiscated without cause or compensation by the defendant prison officials. The United States District Court granted injunctive relief in favor of the prisoners, ordering return or replacement of the property by the defendants. The defendants appealed, and the plaintiffs cross-appealed. However, during the pendency of the appeals, all were dismissed on joint motion of the plaintiffs and defendants. Subsequent to that dismissal, three inmates filed motions under the original district court case caption alleging that the defendants still had not returned or replaced the property which they had confiscated. In proceedings supplemental to its earlier judgment and injunctive order, the district court entered money judgments in favor of the plaintiffs and against the defendants, and the defendants appealed. In considering this appeal, the Fifth Circuit Court of Appeals held that the defendants could not attack the factual basis for the original district court order, because the defendants' appeal and the plaintiffs' cross-appeal had been dismissed earlier. The original order

of the district court therefore remained in full force and effect.

 Similarly, in this case, the joint dismissal in the Seventh Circuit Court of Appeals served only to return jurisdiction to this court regarding the substance of its order dated May 21, 1980, thereby returning that order to its full force and effect. The defendants cannot now challenge the factual basis for that order by contending that the January 2, 1980 demotions are no longer an issue. Merely because the defendants subsequently complied with the substance of this court's order does not absolve the defendants from liability for the actions which gave rise to the court's order.

For these reasons then, the dismissal of the defendants' appeal in the Seventh Circuit Court of Appeals during the pendency of this action had no effect which is relevant to the merits of the plaintiffs' claims. The only effect of that dismissal was to return this court's order of May 21, 1980 to its full force and effect, leaving for determination and trial the merits of all of the plaintiffs' claims against the defendants, including their claims concerning the January 2, 1980 demotions. See also, *McCann v. Kerner,* 436 F.2d 1342 (7th Cir.1971); *Hilton v. W.T. Grant Company,* 212 F.Supp. 126 (W.D.Pa.1962).

All of this may seem to be an unduly complicated legal maze through which the plaintiffs' claims must be sifted. After all this sorting, valid claims are shown although the monetary value of many of them may be little more than nominal.